IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MICHAEL E. SCOTT,<br>Petitioner,<br>v.<br>T. FELKER, Warden,<br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. C 06-1147 JSW (PR)<br><br>ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS |

**INTRODUCTION**

Michael E. Scott, a prisoner of the State of California currently incarcerated at High Desert State Prison in Susanville, California, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This Court ordered Respondent to show cause as to why claims raised in the petition should not be granted. Respondent filed an answer, a memorandum of points and authorities in support thereof, and exhibits. Petitioner subsequently filed a traverse in which he requested an evidentiary hearing regarding a claim of ineffective assistance of counsel. This order denies the petition for a writ of habeas corpus on the merits and denies the request for an evidentiary hearing.

**PROCEDURAL BACKGROUND**

Petitioner was convicted at a jury trial in Alameda County Superior Court on June 3, 2002, of one count of first degree murder (Cal. Penal Code §§ 187, 189), being a felon in possession of a firearm (Cal. Penal Code § 12021, subd.

(a)(1)) , and four counts of attempting to dissuade a witness (Cal. Penal Code § 136.1, subd. (a)(2)). He was sentenced to fifty-nine years and four months to life in state prison.

Petitioner appealed his conviction to the California Court of Appeal, First District, which affirmed the conviction in an unpublished, reasoned opinion filed March 11, 2004. On June 16, 2004, the California Supreme Court denied review. Petitioner's petitions for state habeas corpus relief were denied by the California Court of Appeal and California Supreme Court on June 2, 2005, and May 17, 2006, respectively. On February 16, 2006, Petitioner filed a petition for a writ of habeas corpus with this court. Petitioner filed an amended petition for a writ of habeas corpus on June 7, 2006.

**STATEMENT OF THE FACTS**

The facts of the case are summarized from the California Court of Appeal opinion as follows:

> Appellant was convicted of murdering Eugene Abraham and of the attempting to dissuade four persons who saw him commit the crime.
>
> On the night of October 6, 2001, Abraham, Manuel Adrow, and Lawrence Vaughn were standing near the corner of 31st Street and Martin Luther King Way in Oakland drinking and smoking marijuana. Vaughn left momentarily to buy more alcohol. When he was a few feet away, a car drove up to Abraham and Adrow. Appellant, a man named Billy Moore, and a third man got out of the car. Appellant walked up to Abraham and shot him three times, killing him.
>
> The murder was witnessed by several persons who were on the street that night. Adrow and Moore both told the police that appellant was the shooter. Chance Grundy also told the police he saw appellant shoot Abraham. He gave three detailed statements about the crime. Willie Gilbert said he saw appellant jump out of Moore's car and shoot Abraham. He too gave the police a detailed statement about the crime.
>
> Appellant was arrested and an information was filed charging him with murder (§ 187), and being a felon in

possession of a firearm (§ 12021, subd. (a)(1).) As is relevant here, the information also alleged appellant personally discharged a firearm and caused death within the meaning of section 12022.53, subdivisions (b), (c), and (d).

While appellant was incarcerated at the Santa Rita jail awaiting trial, his telephone calls, like the calls of all inmates, were recorded. Those tapes show appellant knew others had identified him as Abraham's killer.

On November 23, 2001, appellant told an acquaintance that the witnesses were "fittin' to get the squeeze put on their ass" and that they "better be scared."

On December 2, 2001, appellant told his sister that he planned to ask for a speedy trial because when the witnesses "disappear, they ain't going to be able to find them and shit, they gonna have to throw it out."

On January 16, 2002, during a conversation with a woman named Veronica Ward, appellant complained that Chance Grundy had "snitched" and "told everything." Later during the same conversation, appellant speculated that Grundy's actions had caused others to speak with the police.

"[Appellant] But it's really Chance, the one who got everybody cracked. Really Chance put Bill [Moore], Chance put Bill in the position to make him tell.

"[Ward] Uh.

"[Appellant] Chance, Chance need to sleep with the fishes with a weight tied around his neck."

Eleven days later, on January 27, 2002, Grundy was murdered. Someone shot him in the head.

On February 7, 2002, appellant told a man named Ron that he should be sure to come to his preliminary hearing because "I'm just trying to make sure none of my witnesses don't come."

During a conversation with a [woman] named Toyer Grear on February 15, 2002, appellant implored Grear to tell Moore that he should "stay under" and to "stay out of the way."

On February 13, 2002, Willie Gilbert was murdered. He too was shot in the head.

> In March 2002, a second information was filed charging appellant and two other persons with four counts of attempting to dissuade a witness. (§ 136.1, subd. (a)(2).)
>
> The cases against appellant were consolidated and went to trial in May 2002. Since Grundy and Gilbert had been murdered, and Moore apparently refused to testify, the prosecution was forced to rely primarily on the testimony of Adrow, who was standing next to Abraham when he was murdered. Adrow testified unequivocally that appellant shot Abraham. The prosecution buttressed this evidence with testimony from Deputy Sheriff Richard Rice who was working at Santa Rita Jail when appellant was arrested. Rice said appellant told him he needed to be transferred to a different part of the jail because he had "killed a 415 gang member" and was afraid of retribution. The prosecution presented evidence to show that Abraham had identified himself as a "415" gang member.
>
> Appellant presented a mistaken identify defense. He pointed out many inconsistencies in Adrow's testimony and tried to show that Adrow was untrustworthy. Appellant also emphasized that Adrow had a criminal record and that he was drinking and smoking marijuana on the night in question.
>
> The jury considering this evidence convicted appellant on all counts and found the use allegation to be true. Subsequently, the court sentenced appellant to a total of 59 years 8 months to life in prison. This appeal followed.

*People v. Scott*, No. A099394, 2004 WL 473383, at *1-2 (Cal. Ct. App. March 11, 2004) (footnote omitted).

**STANDARD OF REVIEW**

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under the 'contrary to' clause, a federal habeas court may grant the writ if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if a state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. As summarized by the Ninth Circuit: "A state court's decision can involve an 'unreasonable application' of federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000) *overruled on other grounds*; *Lockyer v. Andrade*, 538 U.S. 63, 70-73 (2003) (citing *Williams*, 529 U.S. at 405-07).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411; *accord Middleton v. McNeil*, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must not only be erroneous, but objectively unreasonable); *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

In deciding whether a state court's decision is contrary to, or an unreasonable

application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of the Petitioner's claim in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000).

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings of the Supreme Court as of the time of the state court decision. *Williams* 529 U.S. at 412; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). While the circuit law may be "persuasive authority" for the purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. *Id*.

If the state court decision only considered state law, the federal court must ask whether state law, as explained by the state court, is "contrary to" clearly established governing federal law. *See Lockhart v. Terhune*, 250 F.3d 1223, 1230 (9th Cir. 2001); *see, e.g., Hernandez v. Small*, 282 F.3d 1132, 1141 (9th Cir. 2002) (state court applied correct controlling authority when it relied on state court case that quoted Supreme Court for proposition squarely in accord with controlling authority). If the state court, relying on state law, correctly identified the governing federal legal rules, the federal court must ask whether the state court applied them unreasonably to the facts. *See Lockhart*, 250 F.3d at 1232.

In his petition for a writ of habeas corpus, Petitioner asserts nine[1] claims for relief: (1) hearsay evidence was admitted into evidence in violation of Petitioner's Confrontation Clause rights; (2) admission of the hearsay evidence violated *Bruton v.*

---

[1]Petitioner's original petition raised ten grounds. However, the Court has determined that ground six in the original petition is duplicative of ground one. That claim is resolved under the Court's analysis of claims one through three which are decided jointly in section I, below.

*United States*, 391 U.S. 123 (1968) and was not cured by a limiting instruction; (3) the trial court erred in failing to sever the dissuasion charges from the murder charge; (4) the prosecutor committed misconduct in closing argument by inviting the jury to speculate that Petitioner was responsible for the unavailability of witnesses; (5) the trial court erred by providing CALJIC No. 2.03, an instruction which provides that the jury may consider false statements by Petitioner as circumstances tending to prove consciousness of guilt; (6) the trial court erred by failing to state reasons for its rulings, in violation of Petitioner's right to a fair trial; (7) Petitioner's right to due process was violated because evidence of Petitioner's bad acts (selling marijuana and being in possession of firearms) was admitted; (8) Petitioner suffered ineffective assistance of counsel in that trial counsel failed to request certain jury instructions, to interview prosecution witnesses, to locate, interview, and present certain alibi witnesses and by allowing the jury to learn of Petitioner's prior criminal history; and (9) cumulative error.

## DISCUSSION

### I. Admission of Out-of-Court Statements by Non-Testifying Declarants

In claims one, two, three and nine in the petition, Petitioner argues that his Confrontation Clause and fair trial rights were violated because out-of-court statements by three non-testifying declarants, Billy Moore, Chance Grundy, and Willy Gilbert, identifying Petitioner as the murderer, were admitted into evidence through the testimony of Sergeant Louis Cruz.[2] Petitioner contends that these statements were

[2] Just before the prosecutor began to elicit these statements from Sergeant Cruz, the trial court provide the following special jury instruction: "At this time certain evidence is being produced in this trial concerning statements made by witnesses. You are instructed that this evidence is not being allowed into evidence for the truth of the statements. The evidence is being allowed into evidence for the limited purpose of showing, if it does, the specific intent or mental state of the defendant, Michael Scott. You cannot and must not consider it for any other purpose. Reporters Transcript

hearsay, lacked any exception under state hearsay rules, were not subjected to cross-examination, and were prejudicial, in violation of his constitutional rights. In the alternative, Petitioner contends that if the statements were relevant and properly admitted for the non-truth purpose of showing Petitioner's state of mind as to the dissuasion charges, they were not cross-admissible and highly prejudicial as to the murder charge. Petitioner argues that even if the out-of-court statements were properly admitted as to the dissuasion charges, the trial court violated his rights by failing to sever the murder charge from the dissuasion charges, and failed to adequately instruct the jury to not consider the statements at all with regard to the murder charge.

With respect to the admission of the testimony regarding these statements, the California Court of Appeal held that:

> The portion of Sergeant Cruz's testimony that appellant challenges was not hearsay because it was not offered for its truth, i.e., that appellant shot Eugene Abraham. Rather, as the trial court expressly told the jurors, the testimony was offered for the nonhearsay purpose of showing appellant's mental state, i.e., that he had a motive to dissuade Adrow, Moore, Grundy, and Gilbert from testifying. Since Cruz's testimony was not offered to prove the truth of the matter asserted, it was not hearsay.

*Scott*, 2004 WL 473383, at *3.

The California Court of Appeal further concluded that the court's repeated limiting instructions to the jury, that the statements were coming in *only* for the limited purpose of showing, if they did, Petitioner's state of mind, and the prosecutor's repetition of the instructions during closing arguments, were sufficiently clear to keep

---

(hereinafter "RT") at 1672. Defense counsel immediately raised objections on state and federal grounds, including that the statements were hearsay and more prejudicial than probative under Cal. Penal Code § 352. RT at 1672. Sergeant Cruz then testified that each of the four witnesses Petitioner was charged with attempting to dissuade, Moore, Grundy, Gilbert, and Manuel Adrow, signed a photograph of Petitioner, identifying him as the person who shot Abraham. RT at 1674.

the jury from considering those statements for any truth purpose. *Id.* at *4. The court found that the statements were not hearsay. As a result, the court of appeal did not further determine whether those statements were admissible under hearsay exceptions, or whether Petitioner "'forfeited' or 'waived'" his Confrontation Clause claim as a result of the attempted dissuasion, as Respondent argues. *Id.* at 3.

**A. Hearsay**

**1. Legal Standard**

The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with witnesses against him." U.S. Const. amend. VI. The federal confrontation right applies to the states through the Fourteenth Amendment. *See Pointer v. Texas*, 380 U.S. 400, 403 (1965).

Out-of-court statements constitute hearsay when offered in evidence to prove the truth of the matter asserted. *Anderson v. United States*, 417 U.S. 211, 219 (1974). While the Confrontation Clause does not necessarily bar the admission of hearsay statements, it may prohibit introducing evidence that otherwise would be admissible under a hearsay exception. *See Idaho v. Wright*, 497 U.S. 805, 813, 814 (1990); *see, e.g.*, *Lilly v. Virginia*, 527 U.S. 116, 139-40 (1999) (plurality) (admission of accomplice's hearsay confession to police inculpating defendant violated Confrontation Clause).

The Confrontation Clause applies to all out-of-court testimonial statements offered for the truth of the matter asserted, i.e., "testimonial hearsay." *See Crawford*, 541 U.S. at 51.[3] While the Supreme Court has not articulated a comprehensive definition of testimonial hearsay, "[w]hatever else the term covers, it applies at a

---

[3]The Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. *Crawford*, 541 U.S. at 59 n.9.

minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* at 68. Where non-testimonial hearsay is at issue, the states may develop evidentiary rules for its admissibility, including exemption of such statements from Confrontation Clause scrutiny altogether. *Id.* at 68.

In this case, Petitioner's conviction did not become final until the California Court of Appeal ruled on his direct appeal on March 11, 2004. *Crawford* was not decided until after Petitioner's conviction became final. *Crawford* announced a "new rule" not applicable on collateral review because the rule does not come within either of the exceptions to the *Teague* non-retroactivity rule for new substantive rules or "watershed rules of criminal procedure" which implicate the fundamental fairness and accuracy of the criminal proceeding. *Whorton v. Bockting*, 127 S. Ct. 1173, 1184 (2007) (applying *Teague v. Lane*, 489 U.S. 288, 310-316 (1989)). Therefore, *Crawford* does not apply retroactively on collateral attack. *Id.*

For Confrontation Clause cases governed by pre-*Crawford* law, the legal standard is:

> [A]n out-of-court statement against a criminal defendant was admissible at trial if two conditions were met. *See Ohio v. Roberts*, 448 U.S. 56, 65-66 (1980). First, 'in order to introduce relevant statements at trial, state prosecutors [must] either produce the declarants of those statements as witnesses at trial or demonstrate their unavailability.' [Citations.] Second, even if prosecutors succeed in demonstrating unavailability, the statements are only admissible if they bear 'adequate indicia of reliability.' The 'indicia of reliability' requirement is met if the statements fall within a 'firmly rooted hearsay exception' or contain 'particularized guarantees of trustworthiness.'"

*Bockting v. Bayer*, 505 F.3d 973, 978 (9th Cir. 2007). This court will apply *Roberts* to Petitioner's case, however it will look to *Crawford* for guidance with respect to matters consistent with *Roberts* which *Crawford* did not overrule.

Confrontation Clause claims are subject to harmless error analysis. *See United States v. McClain*, 377 F.3d 219, 222 (2d Cir. 2004). In the context of reviewing a state

court conviction under 28 U.S.C. § 2254, this means that relief is in order only if the admission at issue "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

**2. Analysis**

In this case, as the state court found, these out-of-court statements, in which Moore, Grundy, and Gilbert identified Petitioner, were not hearsay. These statements were brought in through Sergeant Cruz's testimony and involved out-of-court identifications of Petitioner as the person who shot Abraham. RT at 1674. Under the California Evidence Code, hearsay is defined as "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." Cal. Evid. § 1200(a). The statements offered into evidence through Sergeant Cruz's testimony were not being offered for their truth. Rather, as the trial judge made clear in the special jury instruction, the testimony of the statements was offered only for the "limited purpose of showing, if it does, the specific intent or mental state of the [Petitioner] . . . . You cannot and must not consider it for any other purpose." RT at 1672. The testimony was admitted for the limited purpose of showing Petitioner's state of mind, specifically, that he believed the witnesses were important which is why he attempted to dissuade them from testifying. The jury was clearly instructed not to consider the testimony for its truth or any other purpose.

There was no Confrontation Clause violation under either *Crawford* or *Roberts* here because the statements of the unavailable witnesses were not being admitted for their truth, therefore they were not hearsay. In *Roberts*, the Supreme Court specified that the "Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay." 448 U.S. at 65. These ways are that before hearsay is admitted, the unavailability of the witness must be established, and even if it has been, there must be adequate indicia of reliability with regard to the proffered statement. *Id.* The

*Roberts* Court identified the reason underlying these rules, relying on *California v. Green*, 399 U.S. 149 (1970), as to afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement. *Id.* at 65-66. Obviously, this rationale does not apply to a statement where the trier of fact is not called upon to determine its truthfulness because it is not offered for the truth.

The state court's determination that the out-of-court statements brought in through Sergeant Cruz's testimony were not hearsay, and therefore did not violate the Confrontation Clause, was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. This determination was not an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

**B. Severance**

Petitioner next argues that if the out-of-court identification statements were relevant and properly admitted with respect to the dissuasion charges, they should have been severed from the murder charge. Petitioner contends that the statements were not admissible on the murder charge and were highly prejudicial because, as trial counsel argued, "no limiting instruction in this world can get this jury to limit the use of that information" to only the dissuasion charge and for non-truth purposes. RT at 956. Petitioner argues that under *Bruton v. United States*, 391 U.S. 123 (1968), severance of the dissuasion and murder charges was required. According to Petitioner, *Bruton* stands for the proposition that an accomplice's inculpatory statements are so prejudicial and powerfully incriminating against a co-defendant that a jury cannot be presumed to follow instructions limiting their use. Petitioner argues essentially that because Moore and Grundy were Petitioner's accomplices, the jury could not disregard the truth of their statements inculpating Petitioner even though they were instructed to do so by the trial court. Respondent argues that *Bruton* is not applicable in Petitioner's case because

*Bruton* only applies to joint trials by co-defendants, and here Petitioner was separately tried. The California Court of Appeal held likewise. *Scott*, 2004 WL 473383 at *5. Addressing severance, the court held:

> Consolidation is the preferred manner in which to try multiple charges. [Citation.] The trial court is granted the discretion to determine whether multiple charges should be tried together, and its ruling will be reversed on appeal only where the court abused its discretion. ( Ibid.) Refusal to sever may be an abuse of discretion where (1) evidence on the crimes to be jointly tried would not be cross-admissible in separate trials; (2) certain of the charges are unusually likely to inflame the jury; (3) a "weak" case has been joined with a "strong" or with another "weak" case, so that the "spillover" effect of aggregate evidence on several charges might alter the outcome of some or all of them; and (4) any of the charges carries the death penalty or joinder of them turns the matter into a capital case. ( Ibid.)
>
> Here, the bulk of the evidence in the dissuasion counts, i.e., the phone calls appellant made while he was in jail, was relevant in the murder trial because it showed consciousness of guilt. [Citation.] To the extent the jurors might have been tempted to consider in the murder case, the out-of-court statements made by Grundy, Gilbert and Moore, the court, by instruction, and the prosecutor, by argument told the jurors that was not permissible. The nature of the charges in the dissuasion counts were not likely to inflame the jurors. The underlying murder was brutal. The dissuasion counts were considerably less so. This was not a case where a "weak" murder case was bolstered by "strong" dissuasion counts. While the evidence that appellant had attempted to dissuade the witnesses was indeed strong, the same was true of murder charge. An eyewitness, Adrow positively identified appellant as the shooter. Adrow's identification was supported by appellant's admission to the jailer, that he [needed] to be transferred to a different area of the jail because he killed a "415" gang member and needed protection. Finally, this was not a capital case.

*Id.* at *6 (footnote omitted).

**1. Legal Standard**

A joinder, or denial of severance, of co-defendants or counts may prejudice a defendant sufficiently to render his trial fundamentally unfair in violation of due process. *Grisby v. Blodgett*, 130 F.3d 365, 370 (9th Cir. 1997); *Herd v. Kincheloe*, 800 F.2d 1526, 1529 (9th Cir. 1986). It also may result in the deprivation of the specific constitutional guarantee of the right of confrontation. *Id.*

A federal court reviewing a state conviction under 28 U.S.C. § 2254 does not concern itself with state law governing severance or joinder in state trials. *Grisby*, 130 F.3d at 370. Nor is it concerned with procedural right to severance afforded in federal trials. *Id.* Its inquiry is limited to the petitioner's right to a fair trial under the United States Constitution. To prevail, therefore, the petitioner must demonstrate that the state court's joinder or denial of his severance motion resulted in prejudice great enough to render his trial fundamentally unfair. *Id.* In addition, the impermissible joinder must have had a substantial and injurious effect or influence in determining the jury's verdict. *Sandoval v. Calderon*, 241 F.3d 765, 772 (9th Cir. 2000).

There is a "high risk of undue prejudice whenever . . . joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible." *United States v. Lewis*, 787 F.2d 1318, 1322 (9th Cir. 1986). This risk is especially great when the prosecutor encourages the jury to consider the two sets of charges in concert, e.g., as reflecting a modus operandi even though the evidence is not cross admissible, and when the evidence of one crime is substantially weaker than the evidence of the other crime. *Bean v. Calderon*, 163 F.3d 1073, 1084-85 (9th Cir. 1998). But joinder generally does not result in prejudice if the evidence of each crime is simple and distinct (even if the evidence is not cross admissible), and the jury is properly instructed so that it may compartmentalize the evidence. *Id.* at 1085-86; *see, e.g., Davis v. Woodford*, 384 F.3d 628, 638-39 (9th Cir.

2004) (denial of motion to sever trial of capital and noncapital charges based on separate incidents not a violation of due process because evidence was cross-admissible, the weight of evidence with respect to each incident was roughly equal, the evidence as to each incident was distinct, and the jury was properly instructed); *Sandoval*, 241 F.3d at 773 (given the strength of the State's case against petitioner on both sets of murders and the cross-admissibility of the evidence on each set, petitioner's trial was not actually prejudiced by the joinder).

Use of the out-of-court confession (or inculpatory statements) of a co-defendant who did not testify at trial violates the non-confessing defendant's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment and this violation is not cured by a jury instruction that the confession should be disregarded in determining the non-confessing defendant's guilt or innocence. *Bruton v. United States*, 391 U.S. 123, 134-37 (1968). *Bruton* error, however, does not require reversal "'if the other evidence of guilt was overwhelming and the prejudice to the defendant from his co-defendant's admission slight by comparison.'" *Id.* (quoting *United States v. Guerrero*, 756 F.2d 1342, 1348 (9th Cir.)); *see United States v. Gillam*, 167 F.3d 1273, 1277 (9th Cir. 1998) (finding *Bruton* error where co-defendant's redacted admission clearly implicated defendant, but finding error harmless because of strength of government's case against defendant).

In *Tennessee v. Street*, 471 U.S. 409, 414 (1985), the Court held that there was no *Bruton* error where a non-testifying accomplice’s statement inculpating defendant was introduced by a sheriff’s testimony for a non-hearsay purpose. The jury in *Street* was not asked to infer whether the accomplice’s confession proved that the defendant participated in the murder - this would have been hearsay - but instead was pointedly instructed not to consider the truthfulness of the statement. *Id.* The assumption that jurors will follow the court's instructions fully applies when rights guaranteed by the

Confrontation Clause are at issue. *Id.*; *see, e.g., Frazier v. Cupp*, 394 U.S. 731, 735 (1969).

**2. Analysis**

As the California Court of Appeal observed, evidence in the dissuasion counts, specifically the recorded calls Petitioner made from prison, was cross-admissible under state law to the murder count. This evidence was cross-admissible because it tended to show Petitioner's consciousness of guilt with regard to the murder as well as directly to prove his attempts to dissuade prosecution witnesses. Further, this was not a case where a weak murder count was bootstrapped to strong attempted dissuasion counts. The evidence for the murder charge was equally as strong as the evidence for the dissuasion charges. With respect to the murder charge, an eyewitness, Adrow, positively identified Petitioner as the shooter. Adrow's identification was supported by Petitioner's own jailhouse confession that he needed to be transferred to a different area of the jail because he killed a "415" gang member and needed protection. And this evidence was further corroborated by Jackson's testimony placing Petitioner and Adrow at the scene of the murder. Michael Sanders' testimony also linked Petitioner to Grundy and Moore, and provided evidence that Petitioner had access to the type of weapon (.38 revolver) used in Abraham's murder.

As the California Court of Appeal observed, to the extent the jurors might have been tempted to consider in the murder case, the out-of-court statements made by Grundy, Gilbert and Moore, the trial court, by instruction, and the prosecutor, by argument, told the jurors that was not permissible. *See Scott*, 2004 WL 473383, at *4. *Bruton* is not applicable here because Petitioner was not tried *jointly* with those who made the inculpatory statements. On the contrary, *Street* is directly on point. Here, just as in *Street*, out-of-court statements made by non-testifying accomplices were admitted for a non-truth purpose through an officer's testimony, and the jury was pointedly

instructed about the limited purpose of that evidence. The statements were not made by a co-defendant in a joint trial, as in *Bruton*, so *Bruton*'s concern with the jury's ability to follow the limiting instruction is inapplicable here. Rather, as in *Street*, it is assumed that the jury followed the limiting instructions issued by the Court. *Street*, 471 U.S. at 414; *see also Frazier*, 394 U.S. at 735.

The state court's decision was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Nor was the decision an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

**C. Sufficiency of Limiting Instructions**

Petitioner's last claim concerning the admission of out-of-court statements is that the trial court erred by not issuing to the jury a more specific limiting instruction preventing the jury from considering those statements with respect to Petitioner's mental state with regard to the murder charge. The instruction that the court issued admonished the jury that "the evidence is being allowed into evidence for the limited purpose of showing, if it does, the specific intent or mental state of the defendant, Michael Scott. You cannot and must not consider it for any other purpose. RT at 1672. Petitioner argues that the trial court's failure to issue such an instruction was all the more prejudicial here because the prosecution made numerous references to the truth of the out-of-court identifications of Petitioner as Abraham's shooter in his closing arguments.[4] Petitioner further argues that the trial court improperly allowed these out-of-court statements to be considered by the jury in the murder count because they were cross-admissible to show Petitioner's consciousness of guilt.

Respondent counters that there was no reasonable likelihood that the jurors

---

[4] *See* Pet. Traverse at 19.

would consider these out-of-court statements for their truth on the murder charge. The California Court of Appeal concluded that "based on the instructions and the [prosecutor's] argument, that the jurors would have understood [Sergeant Cruz's] testimony was limited and could only be used to establish appellant's state of mind on the attempting to dissuade counts. There was no error." *Scott*, 2004 WL 473383 at *4.

**1. Legal Standard**

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional right].'"). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *See Estelle*, 502 U.S. at 72. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982).

In reviewing an ambiguous instruction, the inquiry is not how reasonable jurors could or would have understood the instruction as a whole; rather, the court must inquire whether there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the Constitution. *See Estelle v. McGuire*, 502 U.S. at 72 & n.4. A determination that there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution establishes only that an error has occurred, however. *See Calderon v. Coleman*, 525 U.S. 141, 146 (1998). If an error is found, the court also must determine that the error had a substantial and injurious effect or influence in determining the jury's verdict, *see Brecht*

*v. Abrahamson*, 507 U.S. 619, 637 (1993), before granting relief in habeas proceedings. *See Calderon*, 525 U.S. at 146-47.

A prosecutor's mischaracterization of a jury instruction is less likely to render a trial fundamentally unfair than if the trial court issues the instruction erroneously:

> [A]rguments of counsel generally carry less weight with a jury than do instructions from the court. The former are not evidence, and are likely viewed as the statements of advocates; the latter, we have often recognized, are viewed as definitive and binding statements of the law. Arguments of counsel which misstate the law are subject to objection and to correction by the court. This is not to say that prosecutorial misrepresentations may never have a decisive effect on the jury, but only that they are not to be judged as having the same force as an instruction from the court.

*Boyde v. California*, 494 U.S. 370, 384-85 (1989) (citations omitted).

**2. Analysis**

Here, the judge repeatedly provided a limiting instruction admonishing the jury that it could not consider the out-of-court statements for the truth. The judge instructed the jury that the testimony of the statements was offered only for the "limited purpose of showing, if it does, the specific intent or mental state of the [Petitioner] . . . . *You cannot and must not consider it for any other purpose*." RT at 1672 (emphasis added).

On its face, this instruction does not reasonably appear to be ambiguous. On the contrary, it is quite clear how the jury was to consider the out-of-court statements, and equally as clear as to how the jury was forbidden from considering them. Further, the prosecutor reiterated the court's instruction in his closing arguments. The prosecutor told the jury that they were not to consider what these witnesses told Sergeant Cruz as the truth, but only that the evidence shows that Petitioner believed that the witnesses were important and that he had the motive to dissuade them from testifying. RT at 1924. To the extent the prosecutor's argument mischaracterized the jury instruction or overemphasized the statement's truth value, the court's clear and unambiguous

instruction cured any error. This court presumes that the jury followed the judge's instructions. In *Street*, 471 U.S. 409, 415 n.6 (1985), the Court observed that the presumption that jurors follow instructions fully applies to claims invoking the Confrontation Clause.

The state court's decision was not contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. This decision was not an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

## II. Prosecutorial Misconduct

Petitioner next claims that the prosecutor committed misconduct in his closing arguments by misstating the evidence. Specifically, Petitioner contends that the prosecutor's argument was "outrageously improper" because: (1) the prosecutor characterized Petitioner's conduct as "bold" and "cocky;" (2) the prosecutor suggested that Petitioner caused unavailable witnesses to disappear; and (3) the prosecutor impermissibly tied evidence from the dissuasion charge to the murder charge in order for the jury to speculate that Petitioner murdered the unavailable witnesses to keep them from testifying. Pet. at 45-47. Petitioner argues that these examples of misconduct rendered his trial unfair in violation of his due process rights.

Respondent argues that the prosecutor's characterization of Petitioner's conduct was supported by the evidence and within the bounds of proper vigorous argument. Further, Respondent contends that the jury would not have speculated about whether Petitioner caused the disappearance of unavailable witnesses because evidence was presented through Deputy Rice's testimony that Petitioner was incarcerated before trial.

The California Court of Appeal addressed this claim as follows:

> A prosecutor commits misconduct when he misstates or mischaracterizes the evidence. [Citation.] However, a

> prosecutor may engage in vigorous argument drawing what he believes to be reasonable deductions from the evidence. [Citation.] The prosecutor's argument here was not misconduct because it was well supported. The prosecution presented evidence that appellant murdered [Abraham] and then tried to cover-up the crime by dissuading witnesses from testifying against him. At one point, appellant told his sister that he planned to ask for a speedy trial because when the witnesses "disappear, they ain't going to be able to find them and shit, they gonna have to throw it out." At another point, he said a witness needed to "sleep with the fishes with a weight tied around his neck." Based on this evidence the prosecutor could reasonably argue that appellant was so bold and cocky he thought he could scare witnesses into not testifying. We see no misconduct.
>
> Appellant also contends the passage we have quoted was misconduct because the prosecutor "invit[ed] the jury to speculate that appellant had murdered the unavailable witnesses to keep them from testifying." "To prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner." [Citation.] On appeal "we 'do not lightly infer' that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements." [Citation.] Here, the prosecutor did not state or suggest that appellant had murdered the witnesses who failed to testify. It is not reasonably likely the [jury] understood the comment as appellant suggests.

**A. Legal Standard**

Prosecutorial misconduct is cognizable in federal habeas corpus. The appropriate standard of review is the narrow one of due process and not the broad exercise of supervisory power. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." *See id.*; *Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor"). Under *Darden*, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness. *Tan v. Runnels*, 413 F.3d 1101,

1112 (9th Cir. 2005). A prosecutorial misconduct claim is decided "'on the merits, examining the entire proceedings to determine whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir.1995) (citation omitted).

Factors which a court may take into account in determining whether misconduct rises to a level of due process violation are: (1) the weight of evidence of guilt, *United States v. Young*, 470 U.S. 1, 19 (1985); (2) whether the misconduct was isolated or part of an ongoing pattern, *see Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir. 1987); (3) whether the misconduct relates to a critical part of the case, *see Giglio v. United States*, 405 U.S. 150, 154 (1972); and (4) whether a prosecutor's comment misstates or manipulates the evidence, *see Darden*, 477 U.S. at 182.

**B. Analysis**

While the prosecutor in this case engaged in vigorous argument, this Court does not find that he committed misconduct that would render the trial fundamentally unfair. The prosecutor did not misstate evidence. Instead, his characterization of Petitioner as bold was supported by the evidence that Abraham's murderer walked right up to him on the street and shot him from a few feet away; the fatal bullet entering Abraham in the chest, traveling through his heart, and exiting his back. RT at 1009-11. The fact that there were other people around Abraham at the time of the shooting further supports the prosecutor's description that the murder was bold. Support for the argument that Petitioner was cocky was found in the admitted tape recordings of his multiple conversations in which he described witnesses against him and ways of dissuading them from testifying.[5] Describing a defendant who witnesses said shot his

---

[5]*See e.g.* Exh. C, People's Exhibit No. (hereinafter "No.") 63 at 4 ("I took the proper channels . . . to holler at my folks . . . . So, nigger fittin' to get the squeeze, nigger fittin' to get the squeeze put their ass in a minute . . . .), No. 79 at 24 ("When he

victim in the chest at close range and then endeavored to scare witnesses from testifying against him as bold and cocky is not beyond the standard for proper closing argument.

There is no support for Petitioner's other arguments, that the prosecutor impermissibly raised speculation with the jury that Petitioner murdered the unavailable witnesses. Under the *Darden* standard for prosecutorial misconduct, Petitioner has failed to establish that the prosecutor acted improperly. However, even if the prosecutor's argument was found to be a bit too vigorous, Petitioner has not demonstrated that the trial was infected with unfairness. None of the classic factors for unfair trials resulting from prosecutorial misconduct are present here. The weight of the evidence against Petitioner was substantial. *See Young*, 470 U.S. at 19. The claim of misconduct concerns a very discreet section of closing arguments, and there is no claim of an ongoing pattern of misconduct throughout the trial. *See Lincoln*, 807 F.2d at 809. The claimed misconduct occurred during summation, at a time when counsel is supposed to make arguments which the jury is instructed not to consider as evidence. *See Giglio*, 405 U.S. at 154. Lastly, because the arguments that the prosecutor made were supported by evidence, they were not misstatements or manipulations of the evidence. *See Darden*, 477 U.S. at 182.

The state court's finding that the prosecutor did not commit misconduct was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. This decision was not an

---

get ready to go to trial . . . they give him all the paperwork for whoever told on him . . . ."), 47 ("The mother fucker . . . I got all the paperwork . . . I just gotta bust Ron head with some black and white, huh."), No. 86 at 3-4 ("Have him make sure he get, tell him he make sure he don't let the nigger Chance or Flip Wil come man."), No. 88 at 7 ("I got to communicate some kinda way though"), No. 93 at 8 ("I'm just trying to make sure none of my witnesses don't come.")

unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

**III. CALJIC No. 2.03**

Petitioner claims that the court committed constitutional error when it gave a CALJIC No. 2.03 instruction to the jury. CALJIC 2.03 provides, "If you find that before this trial the defendant made a willfully false or deliberately misleading statement concerning the crime for which he is now being tried, you may consider that statement as a circumstance tending to prove consciousness of guilt . . . ."

Petitioner argues that this instruction rendered his trial unfair because there was no evidence that he made a false statement. The California Court of Appeal held that:

> We reject his argument for two reasons. First, the instruction had evidentiary support. The prosecutor presented evidence that while appellant was in jail, he told an acquaintance that he did not know anything about [Abraham's] murder because he was "with a broad" that night. This arguably false statement supported the instruction.
>
> Second, any possible error was harmless. "It is error for a court to give an 'abstract' instruction, i.e., 'one which is correct in law but irrelevant.'"[Citation.] However "[i]n most cases an error of this sort is harmless. [Citation.] This is so because the irrelevance of the instruction is shown by its own words, and the jury would see it as surplusage. [Citation.]
>
> Here, if the instruction in question was unsupported, the jurors were well equipped to determine that fact and to disregard it as surplusage. We see no possibility of prejudicial error.

*Scott*, 2004 WL 473383, at *7-8.

**A. Legal Standard**

To obtain federal collateral relief for errors in the jury charge, a petitioner must

show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle*, 502 U.S. at 72 (citing *Cupp*, 414 U.S. at 147); *see also Donnelly*, 416 U.S. at 643 ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional right].'"). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *See Estelle*, 502 U.S. at 72. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *Frady*, 456 U.S. at 169.

A habeas petitioner is not entitled to relief unless the instructional error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). In other words, state prisoners seeking federal habeas relief may obtain plenary review of constitutional claims of trial error, but are not entitled to habeas relief unless the error resulted in "actual prejudice." *Id.* (citation omitted); *see e.g. Coleman v. Calderon*, 210 F.3d 1047, 1051 (9th Cir. 2000) (finding *Brecht* error where "at the very least" the court could not "'say with fair assurance . . . that the judgment was not substantially swayed by the [instructional] error.'") (citation omitted).

**B. Analysis**

Petitioner fails to demonstrate that the challenged instruction infected the entire trial in such a way as to cause the resulting conviction to violate due process. As the California Court of Appeal determined, the instruction was appropriate, rather than erroneous, because it had evidentiary support in the trial record. For instance, the court found that the jury could consider if Petitioner made a deliberately false statement when he told an acquaintance in prison that he did not know about Abraham's murder

because he was with a broad that night. *Scott*, 2004 WL 473383, at *7. It did not require them to do so. If the jury did not believe that Petitioner made a false statement, it would not consider this evidence as reflecting Petitioner's consciousness of guilt. Also, even if they believed that the statement was false, they were not required to find that it reflected Petitioner's consciousness of guilt. At the very worst, as Petitioner contends, the instruction would merely have been irrelevant and the jury would have ignored it. If this were the case, under *Brecht* analysis, Petitioner fails to demonstrate that the instruction had a substantial and injurious effect or influence in determining the jury's verdict.

The instruction at issue was either appropriate because it had evidentiary support or, at most, the instruction was irrelevant but harmless. Thus, the state court's finding was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Nor was the state court's decision an unreasonable determination of the facts in light of the evidence.

**IV. Trial's Court's Failure to State Reasons for Rulings**

Petitioner next claims that his right to due process was violated because the trial court failed to state reasons for its rulings. Petitioner does not argue that the rulings themselves were erroneous, but contends that the trial court's failure to state its reasons was a miscarriage of justice rendering the trial unfair. Petitioner has not identified any legal authority, which supports this as a claim under the United States Constitution. The California Court of Appeal addressed this claim as follows:

> At several points during trial, the court made rulings about the admissibility of evidence under Evidence Code section 352. Appellant now contends the trial court erred. He does not attack the substance of the court's rulings by arguing the court applied the law incorrectly. Instead, he challenges the procedure the court followed arguing the court violated its obligation to state on the record, how it balanced the prejudicial effect of the proposed evidence against its probative value.

> We reject this argument because the court had no such obligation. While a few older decisions stated trial courts were required to make the "weighing ... explicit in the record" [citation], as Justice Mosk explained, the language in those decisions is "no longer vital." [Citation.] The current rule is that a court is not required to state on the record the process by which it has weighed prejudicial impact against probative value. [Citation.]
>
> We also reject appellant's argument that the trial court erred because it failed to explain the basis for other evidentiary rulings that were unrelated to Evidence Code section 352. Appellant has failed to cite any case that holds a court is obligated to state on the record the basis for its rulings. Absent such authority, we have no reason to conclude the trial court erred.

*Scott*, 2004 WL 473383 at *8.

Under *Estelle*, 502 U.S. at 67, "federal habeas corpus relief does not lie for errors of state law." (Internal citations omitted). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. Petitioner has not established a federal claim here regarding the state court's failure to state the reasoning behind its rulings on the record.

The state court's determination of this claim was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Petitioner's claim is thus without merit.

## V. Admission of Other Crimes Evidence

Petitioner next contends that admission of other crimes evidence violated his due process rights. A witness, Michael Sanders, was permitted to testify that he had previously bought marijuana from Petitioner at the house on Thirty-Fourth Street between West Street and Martin Luther King. RT at 1378-80. Sanders often saw

Petitioner with Grundy and Moore at that house. RT at 1381. Sanders also testified that he had seen Moore ride a Yukon (allegedly the same car from which Petitioner exited before shooting Abraham) and that Petitioner and Moore were always together. RT at 1388-91. Finally, Sanders testified that the house from which he bought marijuana from Petitioner always had guns, and that within a week of Abraham's murder, Sanders saw petitioner with a revolver (the type of weapon used in Abraham's murder). RT at 1384-86.

At trial, defense counsel argued that the prejudicial effect of this testimony outweighed its probative value because it was irrelevant and instead it would inflame the jury against Petitioner. RT at 1306. The trial court allowed the testimony because the prosecution laid a sufficient offer of proof that Sanders: (1) saw Moore in the Yukon on the night of Abraham's murder; (2) could connect Moore with Petitioner as close compatriots; (3) had frequented Grundy's house where Petitioner sold him marijuana; (4) had seen firearms while there; and (5) one of the firearms he saw was a black .38 revolver (the type of weapon used in Abraham's murder) held by Petitioner within a week of the shooting. RT at 1304-05. Respondent contends that there is no Supreme Court law applicable to this claim and thus no habeas relief can be granted. In the alternative, Respondent argues that Petitioner fails to assert a fact-specific application of the more general principle of law relating to due process.

There is no reasoned state court opinion addressing this claim. When the state court decisions do not provide a reasoned opinion, as in this case, the court must "perform an 'independent review of the record' to ascertain whether the state court decision was objectively unreasonable." *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003) (internal citation omitted).

**A. Legal Standard**

An error in the admission of evidence is only subject to habeas review if it is of

such magnitude that it precludes the fundamentally fair trial guaranteed by due process. *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir.). The inquiry is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. *See Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995); *Colley*, 784 F.2d at 990. The admission of evidence is only so unfair that it threatens to violate due process if there are no permissible inferences that the jury may draw from it and it is of an inflammatory nature. *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).

The United States Supreme Court has left open the question of whether admission of propensity evidence violates due process. *Estelle*, 502 U.S. at 75 n.5; *see also Alberni v. McDaniel*, 458 F.3d 860, 866-67 (9th Cir. 2006) (state court's denial of due process claim concerning admission of petitioner's propensity for violence was not objectively unreasonable). In *Carey v. Musladin*, the Supreme Court made clear that habeas relief under § 2254 could on only be granted if the state court decision was contrary to, or an unreasonable application of, federal law, as determined by the Supreme Court, 549 U.S. 70, 74 (2006) (citing *Williams*, 529 U.S. at 412) (clearly established federal law refers to holdings of Supreme Court, as opposed to dicta).

**B. Analysis**

Because the United States Supreme Court has left open the question of admissibility of propensity evidence, the state court's decision to admit Sanders' testimony is not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. Further, admission of Sanders' testimony did not violate Petitioner's due process because it was not arbitrary or so prejudicial that it rendered the trial fundamentally unfair.

"Evidence introduced by the prosecution will often raise more than one inference, some permissible, some not." *Jammal v. Van de Kamp*, 926 F.2d 918, 920

(9th Cir. 1991). "Only if there are no permissible inferences the jury may draw from the evidence can its admission violate due process. Even then, the evidence must 'be of such quality as necessarily prevents a fair trial.'" *Id.* (internal citation omitted).

*Jammal* is instructive here. In *Jammal*, when the petitioner was apprehended he had 135,000 dollars in his trunk, which was admitted into evidence. *Id.* He was prosecuted for an earlier drug possession where he also allegedly had 47,000 dollars and a firearm. *Id.* The defense objected that such evidence was prejudicial because it branded petitioner as a high level drug dealer in the minds of the jury. *Id.* The prosecution contended that the jury was to infer from the evidence that the 47,000 dollars and drugs also belonged to petitioner on the theory that defendant frequently ran around with wads of cash in his trunk, and so it was likely that he had done so on the earlier occasion. *Id.* The Ninth Circuit determined that while it was evidentiary error to admit the evidence, because there were permissible rational inferences for the jury to draw, the trial was not fundamentally unfair, and habeas relief was not appropriate. *Id.* at 921-21.

Likewise here, Petitioner's claim is without merit. First, the admission of Sanders' testimony was relevant. Sanders linked Petitioner to Scott and Grundy. Sanders' testimony further showed that Petitioner was in possession of a black .38 revolver within a week of Abraham's murder. That demonstrated that Petitioner had access to the same type of gun used to murder Abraham. As Respondent argues, just because Sanders also happened to identify Petitioner as a marijuana dealer, it is not a likely inference for the jury to conclude that therefore he must also have committed the murder. In fact, the prosecution dispelled such an inference by arguing that Petitioner possessed his weapons for protection, not for the purpose of committing murder. RT at 1918. The evidence was not especially inflammatory and the jury could reach many permissible inferences from it. There was no error.

## VI. Ineffective Assistance of Counsel

Petitioner next claims that his counsel was ineffective.[6] Petitioner bases this claim on the following factors: (1) defense counsel failed to request a limiting instruction regarding Sanders' testimony; (2) counsel failed to investigate the prosecution's witnesses prior to trial; (3) counsel failed to keep out Petitioner's prior conviction; and (4) counsel failed to follow up on alibi witnesses. There is no reasoned state court opinion addressing this claim.

### A. Legal Standard

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). *See Williams (Terry) v. Taylor*, 529 U.S. 362, 404-08 (2000). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Strickland*, 466 U.S. at 686.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, Petitioner must establish two things. First, Petitioner must establish that counsel's performance was deficient and fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. The relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable. *See Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls

---

[6]Petitioner also requested an evidentiary hearing on this claim, which was previously denied as premature (docket no. 29). However, the Court has reconsidered the motion here, after reviewing the merits of the claim, as set forth below.

within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689.

Second, Petitioner must establish that he was prejudiced by counsel's deficient performance and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The *Strickland* framework for analyzing ineffective assistance of counsel claims is considered "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis.

It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the *Strickland* test if the petitioner cannot even establish incompetence under the first prong. *See Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998). The burden to prove prejudice rests with the Petitioner. *Strickland*, 466 U.S. at 693.

**B. Analysis**

**(1) Failure to Request Limiting Instruction**

Petitioner claims that counsel was ineffective because he failed to request a limiting instruction regarding Sanders' testimony. Petitioner acknowledges that counsel was initially effective in vigorously objecting to the introduction of the testimony claiming both that it was irrelevant and also that its prejudicial effect outweighed its probative value. However, Petitioner contends that counsel failed to take the next rational step, requesting an instruction as to the relevance of Sanders' testimony. Pet. Attachment B at 4. Petitioner has not provided an example of any standard California jury instructions providing such an admonishment, nor has Petitioner offered any specific instruction that he contends could have been used.

In evaluating claims for ineffective assistance of counsel, this court does not look at what things counsel could have done, but rather evaluate whether counsel's choices were reasonable. Here, counsel vigorously objected to Sanders' entire testimony, both out of the presence of the jury and then throughout the prosecution's direct. Defense counsel also thoroughly cross-examined Sanders, challenged his credibility, and in line with the defense theory that Petitioner was not there the night Abraham was killed, used Sanders' testimony in summation to suggest that Moore might have been the real shooter. *See, e.g.* RT at 1970. Counsel's performance fell within objective standards of reasonableness. Petitioner has not argued what jury instruction counsel could have proposed, and counsel effectively tied Sanders' testimony into his closing arguments. Because counsel's performance was not deficient, this court does not need to address its prejudicial effect.

**(2) Failure to Interview Prosecution Witnesses**

Petitioner contends that counsel failed to interview prosecution witnesses before trial and as a result a "crucial defense was withdrawn from Petitioner's case." Pet. Attachment B at 9. Aside from this bare assertion, Petitioner has not indicated what defense was withdrawn.

The duty to investigate and prepare a defense does not require that every conceivable witness be interviewed. *Hendricks v. Calderon*, 70 F.3d 1032, 1040 (9th Cir. 1995). A claim of failure to interview a witness cannot establish ineffective assistance when the person's account is otherwise fairly known to defense counsel. *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986). When the record shows that the lawyer was well-informed and the defendant fails to state what additional information would be gained by the discovery he now claims was necessary, an ineffective assistance claim fails. *Id.* From examining the record here, it is clear that counsel's performance was not deficient. He vigorously raised objections, thoroughly

cross-examined witnesses, and provided representation well within reasonable standards. Because Petitioner has not pointed to any specific examples demonstrating counsel's lack of preparation, this claim is without merit.

**(3) Failure to Conceal Petitioner's Criminal History**

Petitioner next claims that counsel erred by allowing the jury to learn of Petitioner's prior narcotics conviction. The prior was admitted as the basis for the charge that Petitioner was a felon in possession of a firearm. Citing the California Penal Code, Petitioner argues that counsel should have allowed him to plead guilty to the prior conviction, thereby eliminating mention of it to the jury. Pet. Attachment B at 9 (citing Cal. Penal Code § 1025). However, as Respondent argues, the jury learned of Petitioner's prior narcotics conviction because he was charged with being a felon in possession of a firearm, not because he chose not to deny the prior for sentence enhancement purposes.

Petitioner has not demonstrated that failure to attempt such a tactic is required to show reasonable competence on the part of counsel, nor has Petitioner demonstrated that he suffered any prejudice from the jury learning about his prior. It is not a logical inference for the jury to assume that a person with a narcotics conviction is likely to commit murder. In addition, there was ample evidence on both the murder and dissuasion charges independent of any consideration of Petitioner's prior. As for the murder count, Petitioner admitted to Deputy Rice that he killed a 415 gang member. Sanders provided identifying information about Petitioner, Grundy, and Moore, as well as showing that Petitioner had access to the murder weapon. Adrow testified as a credible eyewitness to the shooting, and his testimony was bolstered by that of Jackson. As for the dissuasion charges, the prosecution produced seventeen taped phone conversations in which Petitioner discussed his attempts to dissuade witnesses and solicited help from his partners. Also, the prosecution produced documents found in

Petitioner's cell as well as mail at the home of one of his partner's that had witnesses contact information and instructions to dissuade them. The effect on the jury of learning about Petitioner's narcotics prior was inconsequential given the weight of the evidence, and in all likelihood unavoidable because Petitioner was charged with being a felon in possession of a firearm, requiring the prosecution to prove the element of his prior felony conviction. Petitioner has not established that counsel's performance was deficient or prejudicial for failing to prevent this evidence from being admitted. Thus, Petitioner's claim fails.

**(4) Failure to Follow Up on Potential Alibi Witnesses**

Petitioner next claims that his trial counsel provided ineffective assistance by failing to interview three potential alibi witnesses, James Palmer, Jaquari Scott, and Donisha Bruce. According to Petitioner, counsel contacted Bruce once by phone and she told him that she could come and testify on Petitioner's behalf. Counsel then made a second unsuccessful attempt to contact Bruce in order to interview her, and thereafter failed to follow through with her or make any other attempts. According to Petitioner, counsel did not attempt to contact Scott or Palmer despite having been given their contact information by Petitioner. Petitioner claims that he and Palmer were together at the time of the shooting, between 9 p.m. and 11 p.m., and then they met Bruce and Scott at a liquor store around 11 p.m. Petitioner claims that Palmer could testify to his whereabouts and also place Petitioner at the liquor store, after which time Petitioner and Scott spent the night at a motel.

Respondent argues that Bruce and Scott could not provide any useful or exculpatory evidence because the murder took place sometime before 11 p.m. With regard to Palmer, Respondent, citing *Dows v. Wood*, 211 F.3d 480, 486-87 (9th Cir. 2000), argues that aside from Petitioner's self serving contentions, he never provided an affidavit by Palmer or the other alleged alibi witnesses before any state court or this

court supporting the claim.

While the exact time of Abraham's fatal shooting is not clear, it had to occur sometime around or before 10:30 p.m. Christine Middleton, a police evidence technician, testified that she arrived to the murder scene a little after 10:30 p.m. RT at 1017. Upon her arrival, paramedics were already at the scene providing medical aid. RT at 1017. Sergeant Caesar Basa, a patrol supervisor, also testified that a dispatch of the shooting went out a little after 10:30 p.m. RT at 978. Sergeant Basa arrived not too long after other officers. RT at 978. Given this testimony, Petitioner has not established that Scott or Bruce could provide Petitioner with an alibi, even if he had established that they would have testified to meeting Petitioner at a liquor store at 11 p.m. and spending the night together at a motel.

With regard to counsel's failure to pursue Palmer as a potential alibi witness, a defense attorney has a general duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *See Strickland*, 466 U.S. at 691. A claim of negligence in conducting pretrial investigation can form the basis for a claim of ineffective assistance. *See United States v. Tucker*, 716 F.2d 576 (9th Cir. 1983). However, a defendant's mere speculation that a witness might have given helpful information if interviewed is not enough to establish ineffective assistance. *See Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). To establish prejudice caused by the failure to call a witness, a petitioner must show that the witness was likely to have been available to testify, that the witness would have given the proffered testimony, and that the witnesses' testimony created a reasonable probability that the jury would have reached a verdict more favorable to the petitioner. *Alcala v. Woodford*, 334 F.3d 862, 872-73 (9th Cir. 2003).

Aside from Petitioner's self serving speculative assertions regarding Palmer's

potential value as a witness, he has not shown that Palmer was likely to have been available to testify, would have provided exculpatory testimony, or that Palmer's testimony created a reasonable probability that the jury would have reached a more favorable verdict. Under *Alcala*, Petitioner must show all of these factors to establish prejudice. Petitioner's speculation and conclusory assertions are not enough to prove the ineffective assistance claim. Because Petitioner has failed to prove any of the four alleged instances of ineffective assistance, this claim fails on the merits. Consequently, Petitioner's motion for an evidentiary hearing on his ineffective assistance of counsel claim is likewise DENIED, because Petitioner has not established that his allegations would establish a right to relief on the merits (docket no. 27). *See, Williams v. Calderon*, 52 F.3d 1465, 1484 (9th Cir. 1995); *Jeffries v. Blodgett*, 5 F.3d 1180, 1187 (9th Cir. 1993).

## VII. Cumulative Error

Lastly, Petitioner claims that his trial was fundamentally unfair due to the cumulative effect of each of the above claims. There is no reasoned opinion addressing this claim from the state court.

### A. Legal Standard

In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned. *See Alcala v. Woodford*, 334 F.3d 862, 893-95 (9th Cir. 2003) (reversing conviction where multiple constitutional errors hindered defendant's efforts to challenge every important element of proof offered by prosecution); *Thomas v. Hubbard*, 273 F.3d 1164, 1179-81 (9th Cir. 2002) (reversing conviction based on cumulative prejudicial effect of (a) admission of triple hearsay statement providing only evidence that defendant had motive and access to murder weapon; (b) prosecutorial misconduct in disclosing to the jury that defendant had

committed prior crime with use of firearm; and (c) truncation of defense cross-examination of police officer, which prevented defense from adducing evidence that someone else may have committed the crime and evidence casting doubt on credibility of main prosecution witness); *McDowell v. Calderon*, 107 F.3d 1351, 1368 (9th Cir.) (cumulative effect of errors may deprive habeas petitioner of due process right to fair trial), *amended*, 116 F.3d 364 (9th Cir. 1997), *vacated in part by* 130 F.3d 833, 835 (9th Cir. 1997) (en banc); *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996) (prejudice resulting from cumulative effect of improper vouching by prosecutor, improper comment by prosecutor about defense counsel, and improper admission of evidence previously ruled inadmissible required reversal even though each error evaluated alone might not have warranted reversal).

Cumulative error is more likely to be found prejudicial when the government's case is weak. *See id.; see, e.g., Thomas*, 273 F.3d. at 1180 (noting that the only substantial evidence implicating the defendant was the uncorroborated testimony of a person who had both a motive and an opportunity to commit the crime). However, where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation. *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002).

**B. Analysis**

Here, the government's case was strong. The evidence by which the jury was able to convict Petitioner for murder and attempted dissuasion of four witnesses included Adrow's eyewitness testimony, which was corroborated by Jackson's testimony, Petitioner's own jailhouse admission of killing a 415 gang member, seventeen recorded telephone conversations, and Sander's testimony linking Petitioner to his confederates and access to the type of weapon used to kill Abraham. Further, this court has not found any of the individual claims of error to be meritorious. The

cumulative effect of many claims, none of which amounts to error, cannot amount to reversible error. Thus, this claim is denied on the merits.

**CONCLUSION**

After a careful review of the record and pertinent law, the petition for writ of habeas corpus is DENIED. The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED: December 29, 2008

JEFFREY S. WHITE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL E SCOTT,

Plaintiff,

v.

T FELKER et al,

Defendant.
_______________________________________/

Case Number: CV06-01147 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on December 29, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Michael E. Scott
K31521
P.O. Box 3030
Susanville, CA 96127-3030

Dated: December 29, 2008

Jennifer Ottolini
Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk